IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Raymond Edward Chestnut, | C/A No.: 1:13-1870-RBH-SVH |
| Plaintiff, | |
| vs. | |
| United States of America; Rory Thompson, Correctional Officer; T. McGirt, Correctional Officer; and LeRoy Jones, individual and in their official capacities, | REPORT AND RECOMMENDATION |
| Defendants. | |

Plaintiff Raymond Edward Chestnut, proceeding pro se and in forma pauperis, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971)[1] and the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346 and 28 U.S.C. § 2671, *et seq*. At the time of the incidents giving rise to the complaint, Plaintiff was incarcerated at the Federal Correctional Institution in Bennettsville, South Carolina ("FCI-Bennettsville"),[2] a facility of the Bureau of Prisons ("BOP"). Plaintiff sues the United States of America ("United States") and correctional officers Thompson, McGirt, and Jones (collectively "Defendants"),

---

[1] *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983 and case law involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

alleging claims of excessive force, cruel and unusual punishment, and retaliation.

This matter comes before the court on Defendants' motion to dismiss, or in the alternative, motion for summary judgment.[3] [Entry #40]. The motion having been fully briefed [Entry #43, #45, #59, #60, #61], it is ripe for disposition. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

I.   Background

   A.   Procedural History

Defendants filed their motion to dismiss, or in the alternative, motion for summary judgment on November 8, 2013. [Entry #33]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #34]. Plaintiff did not properly respond to the motion by the court-ordered deadline, but instead sent letters to the court indicating that he had inadequate paper and research to respond to Defendants' motion. [Entry #36, #37]. On March 5, 2014, the court advised Plaintiff that if he failed to respond by March 19, 2014, the court would recommend dismissal. [Entry #38]. Plaintiff did not respond and on March 24, 2014, the

---

[2] Plaintiff is currently incarcerated at USP-Lewisburg in Pennsylvania.
[3] Because the court has considered matters outside of the pleadings, the undersigned considers the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

undersigned recommended Plaintiff's action be dismissed with prejudice for failure to prosecute. [Entry #40]. On March 26, 2014, Plaintiff sent a letter to the court inquiring if the court received a copy of his response to Defendants' summary judgment motion that he allegedly provided to prison authorities on March 19, 2014. [Entry #42]. On March 31, 2014, Plaintiff filed a response to Defendants' motion for summary judgment. [Entry #43]. On May 20, 2014, the district judge remanded the case to the undersigned for consideration of Defendants' motion in light of Plaintiff's response in opposition. [Entry #56].

B.   Factual History

Plaintiff claims that Thompson and Jones used excessive force against him on October 10, 2011, while moving him to a new cell. [Entry #1 at 2–8]. Specifically, Plaintiff contends that Thompson informed him that he was moving to another single-person cell, but after Thompson placed Plaintiff in hand restraints, he told Plaintiff that he lied. *Id.* at 3. Plaintiff then told Thompson he was "full of it." *Id.* Plaintiff alleges that while he was exiting the cell, Thompson pushed him, causing his head and back to hit the corner of the shower. *Id.* According to the complaint, Thompson then grabbed Plaintiff by the neck and slapped him. *Id.* at 4. Plaintiff contends that Thompson left the cell and secured the door. *Id.* at 4. Plaintiff alleges that a few minutes later, Thompson returned to the cell with Jones. *Id.* Plaintiff claims that he was backing out of the cell, as instructed, when Jones punched him in the mouth, causing his lip to swell for two days. *Id.* at 4.

Upon arriving at the new cell, Plaintiff contends that he told Thompson and Jones that he did not want to room with another inmate. *Id.* at 4–5. Plaintiff alleges Jones

pushed him into the cell, causing him to hit his forearm on a table. *Id.* at 5. Plaintiff alleges when he refused to move away from the door to allow his cellmate to be uncuffed, Thompson and Jones reentered the cell and Thompson placed Plaintiff on his stomach on the bottom bunk. *Id.* at 5–6. Plaintiff alleges that when he resisted, Thompson choked him and punched him in the stomach and chest while Jones held him by the feet and pressed his knee into Plaintiff's stomach. *Id.* at 6. Plaintiff contends that while Thompson and Jones began exiting the cell, Plaintiff attempted to prevent the cell door from closing and Jones kicked him in the knee. *Id.* at 7. Plaintiff alleges Jones and Thompson struggled with him to secure the cell door and Plaintiff's left forearm became caught in the doorway. *Id.* Plaintiff contends Jones and Thompson noticed his arm was in the doorway, and continued to close the door, causing Plaintiff's arm to be bruised and swollen for seven days. *Id.*

On December 13–14, 2011, Plaintiff claims that Thompson put a razor blade in his food in retaliation for Plaintiff's filing of a grievance. *Id.* at 8–10. Plaintiff contends that he cut his mouth on the razor, requiring medical treatment. *Id.* at 9. Plaintiff alleges McGirt advised him to withdraw grievances he filed against Thompson, and when Plaintiff refused, McGirt and Thompson allegedly filed false "government official documents against [him]." *Id.* at 10–11. Plaintiff seeks declaratory relief and monetary damages. *Id.* at 14.

II.    Discussion

    A.    Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no

4

genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court

5

assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

  B. Analysis

    1. Monetary Relief in Official Capacity Claims

To the extent Plaintiff sues Thompson, McGirt, and Jones in their official capacities for monetary relief, Defendants assert that the court lacks subject matter jurisdiction. Under the principle of sovereign immunity, individuals may not sue the United States or its agencies without their consent. *See FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994) (declining to extend *Bivens* to permit suit against a federal agency); *Global Mail Ltd. v. U.S. Postal Service*, 142 F.3d 208, 210 (4th Cir. 1998) (finding that a federal governmental entity is entitled to sovereign immunity unless Congress waives that immunity and consents to suit). A suit against Defendants in their official capacities would be tantamount to a suit against the government itself, *Dugan v. Rank*, 372 U.S. 609, 620 (1963), and "the United States has not waived sovereign immunity in suits claiming constitutional torts." *Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999). Therefore, the undersigned finds that the court lacks subject matter jurisdiction over any claims Plaintiff may be asserting against Thompson, McGirt, and Jones in their official capacity for monetary damages.

    2. Exhaustion of Administrative Remedies

Defendants contend that Plaintiff failed to exhaust his administrative remedies on

his excessive force claim prior to filing his lawsuit.[4] The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement that must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741.

The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 87 (2006). "An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant." *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005).

Plaintiff contends that he filed grievances against Thompson and Jones and attaches a copy of the purported grievances. [Entry #43 at 2, #43-2 at 4–9]. Plaintiff further argues that BOP policy states that an inmate may consider the remedy denied if a

---

[4] Defendants concede that Plaintiff exhausted the remaining claims in his complaint. [Entry #33 at 7].

response is not provided by the due date. [Entry #59 at 2]. Plaintiff contends that the response to his excessive force administrative remedy was due by July 27, 2013, and he therefore considered the non-response a denial and then filed his complaint. *Id.*

The undersigned has reviewed the administrative remedies Plaintiff attaches and it appears that Plaintiff did not receive the final response to his excessive force complaint against Thompson and Johnson until November 19, 2013. [Entry #43-2 at 8–9]. Plaintiff filed his complaint on July 9, 2013. Even utilizing the July 27, 2013, non-response date as a denial, Plaintiff's complaint, filed July 9, 2013, was filed prematurely. Because Plaintiff did not exhaust his excessive force claim prior to bringing this lawsuit, the undersigned recommends Defendants be granted summary judgment on the excessive force claim. *See Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008) ("prisoner must exhaust . . . prior to filing suit in federal court"); *Anderson,* 407 F.3d at 677 (finding that exhaustion is a prerequisite to suit that must be completed prior to filing an action).[5]

### 3. Razor Blade in Food

Plaintiff contends he was injured when Thompson served him food that contained a razor blade. [Entry #1 at 8–10]. Plaintiff contends that the United States is liable under the FTCA for Thompson having negligently placed a razor blade in his food. [Entry #14].

The Eighth Amendment prohibits punishments which "involve the unnecessary

---

[5] The undersigned has reviewed the grievances attached to Plaintiff's pleadings and observes that the grievances for the razor blade appear to be the same grievances referenced in Plaintiff's excessive force claim. [Entry #1-4, #43-2 at 4–9]. The failure to exhaust administrative remedies, however, is an affirmative defense, *see Anderson,* 407 F.3d at 683, and Defendants concede that Plaintiff exhausted his administrative remedies on his razor blade claim. [Entry #33 at 7–8].

and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)).

The FTCA provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for loss of property or personal injuries. 28 U.S.C. § 1346(b)(1). This limited waiver applies to the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Under the FTCA, the court must determine liability in accordance with the substantive tort law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because Plaintiff alleges negligence that occurred while he was housed in a BOP facility located in South Carolina, South Carolina's substantive law controls. To recover in a negligence claim under South Carolina law, "a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000). The BOP owes Plaintiff an affirmative legal duty in accordance

with 18 U.S.C. § 4042, which provides that the BOP "shall . . . provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). For purposes of an FTCA claim, the duty is one of "reasonable care." *See Johnson v. U.S. Gov't*, 258 F. Supp. 372, 376 (E.D. Va. 1966) (holding that duty of care "only requires the exercise of ordinary diligence under the circumstances"); *see also Beckwith v. Hart*, 263 F. Supp. 2d 1018, 1022 (D. Md. 2003).

Defendants contend Plaintiff has no proof that he was served food that contained a razor blade, that Thompson placed a razor blade in his food, or that he sustained any injury from this incident. [Entry #33 at 14, 18]. Thompson denies placing a razor blade in Plaintiff's food. [Entry #33 at 9].[6] Plaintiff submits his medical records, his own affidavit, and affidavits from Jimmy Davis and Lawrence Byrd in support of his contention that he was injured eating food that contained a razor blade. [Entry #1-3, #43, #43-2 at 13–14, #59, #59-2, #59-4].[7] Plaintiff's medical records indicate that in December 2011, he had a superficial break in the skin to his lower lip and no other injury to his oral cavity. [Entry #1-3 at 1]. Davis attests that around December 2011 or January 2012, he witnessed Thompson tell Plaintiff that Thompson had put a razor blade in Plaintiff's food. [Entry

---

[6] Thompson also contends that he did not serve food to Plaintiff again after Plaintiff made this allegation. [Entry #33 at 9].

[7] Plaintiff also offered BOP documents that purport to show that Thompson served Plaintiff meals after the December 2011 incident. [Entry #43-2 at 3–5].This document shows that Plaintiff received meals from January to March 2012, but does not indicate which officer served him the meals. *Id.*

#59-2 at 1]. Plaintiff and his cellmate Byrd attest that Plaintiff received a tray with a razor blade in his food in December 2011, and when Plaintiff asked Thompson if he put the razor blade in his food, Thompson stated "I served you your food did[n't] I." [Entry #59-4, #43-2 at 13–14].

The undersigned finds that Plaintiff has not provided sufficient evidence to create a genuine issue of material fact as to whether Thompson placed a razor blade in Plaintiff's food. Both Plaintiff and his cellmate Byrd attest only that Thompson admitted to serving the food. Further, Davis' affidavit, which does not identify who he is or how he came to overhear Thompson's confession, is insufficient to qualify as "specific facts" to challenge Thompson's liability. *See Ross PM Terminals, Inc. v. Mundi*, C.A. No. 10-3588, 2013 WL 153847, at *5 (D. Md. Jan. 14, 2013) (finding statement opposing summary judgment insufficient to raise genuine issue of fact when the basis for, or evidence supporting the contention, is not set forth); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used . . . to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's cruel and unusual punishment and FTCA claims.

    4.    False Incident Report

Plaintiff contends that McGirt and Thompson filed false incident reports against him in retaliation for his grievance against Thompson. [Entry #1 at 10–12]. "Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C.

11

§ 1983, even if the act, when taken for different reasons, would have been proper." *American Civil Liberties Union, Inc. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). However, the Fourth Circuit has also mandated that claims of retaliation should be regarded with skepticism, *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), and has stated:

> [W]e believe that *in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive § 1915(d). To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation.

*Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally-protected right or that the act itself violated such a right." *Adams*, 40 F.3d. at 75. An inmate must also present more than conclusory accusations of retaliation, *id.* at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g., Cochran* 73 F.3d at 1318; *Hughes v. Bledsoe*, 48 F.3d. 1376, 1387 n. 11 (4th Cir. 1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *American Civil Liberties Union*, 999 F.2d at 785 ("Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation.").

Plaintiff's use of the BOP's grievance procedure does not constitute the exercise of a constitutionally-protected right. *Adams,* 40 F.3d at 75 (finding that an inmate does

not have a constitutional right to file a grievance). Additionally, Plaintiff fails to set forth sufficient evidence to establish that Thompson and McGirt took retaliatory actions against him in response to his grievances against Thompson. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's retaliation claim.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment [Entry #33] be granted and this case be dismissed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 2, 2014                                             Shiva V. Hodges
Columbia, South Carolina                                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).